STATE *ex rel.* FRANK J. BANACH

*v.*

OTTO C. BOLES, *Warden,*

WEST VIRGINIA PENITENTIARY

(No. 12242)

Submitted June 18, 1963.            Decided July 9, 1963.

BERRY, PRESIDENT, dissenting.

*Chambers & Chafin, James E. Chambers,* for relator.

*C. Donald Robertson,* Attorney General, *George H. Mitchell,* Assistant Attorney General, for respondent.

BROWNING, JUDGE:

Upon application of the petitioner, Frank J. Banach, this Court issued a writ of habeas corpus ad subjiciendum on May 5, 1963, returnable June 18, 1963, and appointed counsel to represent him before this Court.

The petition alleges petitioner's indictment and conviction at the March, 1960, term of the Circuit Court of Wayne County, the overruling of his motion for a new trial and the imposition of a sentence to a term of 20 years in the state penitentiary, which sentence petitioner is now serving. The petition then alleges that, subsequent to his commitment to the state penitentiary, he applied to the Circuit Court of Wayne County for a transcript of the proceedings, which application was denied on the ground that there were "no funds available to provide him with the same", and that he thereafter wrote to the attorney who had represented him at his trial requesting him to obtain such transcript and was informed by him that his efforts in that regard were un-availing.

Attached to the petition as exhibits were typewritten copies of: a "Request for Transcript", undated, directed to the Honorable Charles W. Ferguson, Judge of the Circuit Court of Wayne County, reciting the fact that counsel appointed by the Court to represent him during the trial had withdrawn from any further representation and that, he now desiring to seek an appeal or writ of error from his conviction, "he hereby requests the Court in writing to direct the Court Report (sic) to furnish a transcript of the tesimony and all proceedings" without charge "he being without financial means to pay for them" and set out 12 assignments of error, of which one related to the insufficiency of the evidence, and one to the admission of improper evidence in behalf of the state, concluding with the admonition that if the request for a transcript were denied he would seek a writ of mandamus in this Court to compel its production; and, a copy of a letter dated August 18, 1960, addressed to petitioner and purporting to be from James E. Chambers of

Huntington, West Virginia, counsel appointed to represent him at his trial, stating that he, Chambers, had discussed petitioner's case with the Judge and Prosecuting Attorney of Wayne County, and had been informed that there were no funds available with which to provide a transcript and he had been unable to obtain a court order to supply one. The letter further stated that counsel "felt that the verdict was contrary to the evidence and that your guilt was not established beyond a reasonable doubt."

Respondent appeared in answer to the writ and demurred on the ground that petitioner had failed to comply with the mandatory provisions of Code, 51-7-7, as amended, for obtaining a transcript and answered, averring petitioner's lawful confinement under proper court order.

The following facts were stipulated: (1) Petitioner was indicted at the March, 1960, term of the Circuit Court of Wayne County for the crime of armed robbery; (2) Upon petitioner's plea of not guilty, petitioner was tried and convicted as charged and, after the overruling of a motion for a new trial, was sentenced to a term of 20 years; (3) petitioner prepared a written request for a transcript but there is no evidence that such was filed with the Court, however, a request, similar in all respects to that attached to the petition, was found in the files in the office of the Prosecuting Attorney of Wayne County; and (4) On August 18, 1960, James E. Chambers, counsel appointed by the Court, wrote the letter, a copy of which is attached to the petition.

A letter from the Assistant Prosecuting Attorney of Wayne County, affixed to the stipulation and referred to in (3) above, relates that upon inquiry, the Judge, Court Reporter and the Circuit Clerk stated that they had no remembrance or knowledge of petitioner's request for a transcript and that, although the original was found in the file in the Prosecuting Attorney's office, ". . . we do not know how it got there."

Code, 51-7-7, as amended, provides:

> "In any case wherein the court has appointed counsel for an indigent person under indictment

for either a misdemeanor or felony and such indigent accused has been tried and found guilty under such indictment and desires to seek an appeal or writ of error from the court's judgment on such conviction, the court, upon written request of such convicted person's counsel setting forth the grounds upon which the appeal or writ of error will be sought, shall authorize and direct the court reporter to furnish a transcript of the testimony and proceedings of the trial, or such part or parts thereof as counsel shall have indicated in his request to be necessary, to the convicted person, without charge to him, for use in seeking his appeal or writ of error, and the cost of such transcript in the case of a misdemeanor conviction shall be certified by the judge of the court to the county court of the county wherein the accused person was convicted and shall be paid out of the county treasury thereof, and in cases of felony convictions the cost of such transcript shall be certified by the judge of the court to the auditor of the State and shall be paid out of the treasury of the State from the appropriation for criminal charges."

In a series of decisions, beginning with *Griffin* v. *Illinois,* 351 U. S. 12, 76 S. Ct. 585, 100 L. Ed. 891, decided in 1956, the Supreme Court of the United States has consistently held it to be a violation of the Fourteenth Amendment to deprive a person, because of his indigency, of any right of appeal afforded to other convicted defendants. In the *Griffin* case, the applicable statute provided for the furnishing of free transcripts to indigent defendants only in cases where such defendants had been sentenced to death. Griffin and a codefendant were convicted of armed robbery and, immediately after their conviction, filed a motion in the trial court requesting that a transcript of the proceedings be furnished them without cost, alleging their inability to pay the necessary fees. The trial court denied the motion, though the allegations of indigency were not denied. Defendants then filed a petition under the Illinois Post-Conviction Hearing Act, which, in effect, provided for a free transcript to be furnished to convicted indigent defendants where constitutional issues were raised but not otherwise, alleging nonconstitutional, reversible errors in the trial. Such petition

was dismissed in the trial court and the dismissal was affirmed on appeal. The Supreme Court, on certiorari, reversed that decision and held that a state which grants appellate review cannot do so ". . . in a way that discriminates against some convicted defendants on account of their poverty. . . . Consequently at all stages of the proceedings the Due Process and Equal Protection Clauses protect persons like petitioners from invidious discriminations. . . ." The Court also stated:

> ". . . We must therefore assume for purposes of this decision that errors were committed in the trial which would merit reversal, but that the petitioners could not get appellate review of those errors solely because they were too poor to buy a stenographic transcript."

Subsequent to the *Griffin* case, the Supreme Court, in *Eskridge* v. *Washington State Board of Prison Terms and Paroles,* 357 U. S. 214, 78 S. Ct. 1061, 2 L. Ed. 2d 1269, decided in 1958, considered a Washington statute providing for a transcript to be furnished to an indigent defendant at public expense if, in the opinion of the trial judge justice would be promoted thereby. The defendant was convicted in 1935, gave notice of appeal and moved for a free transcript; the trial judge denied the motion, finding that ". . . justice would not be promoted . . . and in the Court's opinion no grave or prejudicial errors occurred . . . [in the trial]." The defendant thereafter sought a writ of mandamus in the Supreme Court of Washington which was denied. In 1956, defendant applied for a writ of habeas corpus to the Washington Supreme Court, which was denied and, on certiorari, the Supreme Court reversed, stating: "In this Court the State does not deny petitioner's allegations of poverty, the substantiality of the trial errors he alleges, or the necessity for him to have some record of the proceedings in order to prosecute his appeal properly. . . . In Griffin v. People of State of Illinois, 351 U. S. 12, 76 S. Ct. 585, 100 L. Ed. 891, we held that a State denies a constitutional right guaranteed by the Fourteenth Amendment if it allows all convicted defendants to have appellate review except those who cannot afford to pay for the records of their trials. We hold that

Washington has denied this constitutional right here. The conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript. We do not hold that a State must furnish a transcript in every case involving an indigent defendant. But here, as in the Griffin case, we do hold that, '[d]estitute defendants must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.' Griffin v. People of Illinois, 351 U. S. 12, 19, 76 S. Ct. 585, 591."

The recent decisions in the cases of *Lane, Warden* v. *Brown,* 372 U. S. 477, and *Draper* v. *Washington,* 372 U. S. 487, both decided March 18, 1963, and *Norvell* v. *Illinois,* decided May 27, 1963, provide further clarification of the principles announced in the *Griffin* case. In a concise summary in the *Lane* case, Justice Stewart states:

"In *Griffin* v. *Illinois,* 351 U. S. 12, the Court held that a State with an appellate system which made available trial transcripts to those who could afford them was constitutionally required to provide 'means of affording adequate and effective appellate review to indigent defendants.' . . . 'Destitute defendants,' the Court held, 'must be afforded as adequate appellate review as defendants who have money enough to buy transcripts.' . . . In *Burns* v. *Ohio,* 360 U. S. 252, involving a \$20 fee for filing a motion for leave to appeal a felony conviction to the Supreme Court of Ohio, this Court reffirmed the *Griffin* doctrine, saying that 'once the State chooses to establish appellate review in criminal cases, it may not foreclose indigents from access to any phase of that procedure because of their poverty. . . . This principle is no less applicable where the State has afforded an indigent defendant access to the first phase of its appellate procedure but has effectively foreclosed access to the second phase of that procedure solely because of his indigency.' . . . In *Smith* v. *Bennett,* 365 U. S. 708, the Court made clear that these principles were not to be limited to direct appeals from criminal convictions, but extended alike to state post conviction proceedings. 'Respecting the State's grant of a right to test their detention,' the Court said, 'the Fourteenth Amend-

ment weighs the interests of rich and poor criminals in equal scale, and its hand extends as far to each.' . . . In *Eskridge* v. *Washington Prison Board,* 357 U. S. 214, the Court held invalid a provision of Washington's criminal appellate system which conferred upon the trial judge the power to withhold a trial transcript from an indigent upon the finding that 'justice would not be promoted . . . in that defendant has been accorded a fair and impartial trial, and in the Court's opinion no grave or prejudicial errors occurred therein.' . . . There it was said that 'the conclusion of the trial judge that there was no reversible error in the trial cannot be an adequate substitute for the right to full appellate review available to all defendants in Washington who can afford the expense of a transcript.' . . .

"The present case falls clearly within the area staked out by the Court's decisions in *Griffin,* *Burns, Smith,* and *Eskridge.* To be sure, this case does not involve, as did *Griffin,* a direct appeal from a criminal conviction, but *Smith* makes clear that the *Griffin* principle also applies to state collateral proceedings, and *Burns* leaves no doubt that the principle applies even though the State has already provided one review on the merits."

See also: · *Douglas* v. *California,* and *Gideon* v. *Wainwright,* decided by the Supreme Court on March 18, 1963.

Code 51-7-7, as amended, enacted as Chapter 52, Acts of the Legislature, Regular Session, 1947, heretofore quoted, supplements, and perhaps exceeds, the rights thus guaranteed by the Fourteenth Amendment to the Constitution of the United States and Sections 10 and 17 of Article III of the Constitution of this State in that it provides for the furnishing of a transcript at public expense to indigent defendants, whether they stand convicted of a felony or misdemeanor. This statute has been directly before this Court on two previous occasions. In *Linger* v. *Jennings,* 143 W. Va. 57, 99 S. E. 2d 740, decided in 1957, the ruling of the *Griffin* case was adopted and applied, the Court holding that to limit the application of the statute only to indigent defendants for whom counsel had been appointed by the trial court would be to favor one class of indigent defendants over another and to that extent was violative of the

due process and equal protection clauses of the state and federal constitutions. The defendant in that case had employed counsel at his trial and had thereafter become indigent. A request for a transcript at public expense was denied by the trial court and this Court issued a writ of mandamus to compel its production stating: "This State having provided in its Constitution and in its statutory law in criminal cases for a writ of error to this Court, in derogation of the common law, this Court will not in violation of the due process and equal protection clauses of the Constitutions of the United States and of the State of West Virginia withhold from this defendant the right to apply for a writ of error, which right can only be had in the event that the defendant has available for his application a transcript of the record of the testimony and proceedings had in the trial at which he was convicted." In the two cases styled *State v. Bosworth*, 143 W. Va. 725, 105 S. E. 2d 1, decided the following year, it was held that the determination of whether a defendant convicted of a felony is indigent within the meaning of the statute rests within the sound discretion of the trial court. The question was raised therein as to the authority of the trial court to order the furnishing of a transcript and thus expend public money, concerning which the Court, without deciding whether any such authorization was necessary, said: "A reading of the statute clearly requires that, in cases of felony convictions, 'the cost of such transcript shall be certified by the judge of the court to the auditor of the State and shall be paid out of the treasury of the State from the appropriation for criminal charges.' Stronger or more clear authority can hardly be imagined."

In the instant case there is no denial that petitioner is an indigent person within the meaning of the statute or that a transcript of the testimony was necessary to afford petitioner an adequate appellate review of his application for a writ of error, the state's only contention being that there is no showing that a proper request was made therefor. As heretofore stated, petitioner, in his sworn application for the writ sought herein, avers that he applied to the Circuit Court of Wayne County for a transcript of the testimony and proceedings, and attached to his petition a copy of such

request setting forth the grounds upon which a writ of error would be sought, which request was denied on the ground that there were no funds available. That averment is not controverted, the only denial being that the Judge and Circuit Clerk had no remembrance of it. The original of such request was admittedly found in the files of the office of the Prosecuting Attorney, a public official of Wayne County and an officer closely connected with the court. The letter of Chambers relating an oral conversation with the Judge and Prosecuting Attorney is stipulated as having been written and the recital therein is not controverted. Without deciding whether any one of these allegations would be sufficient in itself, we are constrained to hold that, in the absence of a categorical denial, petitioner has shown a substantial compliance with the requirements of the statute and the failure to provide him with a transcript at public expense was a denial of the rights guaranteed to him under the federal and state constitutions. It should be pointed out, however, that neither under the decisions heretofore referred to nor under Code, 51-7-7, as amended, is the State required to furnish a complete transcript in every case, but need only supply the part or parts thereof necessary to afford effective appellate review of the grounds asserted for reversal.

Since, under the *Griffin* case, we must assume for purposes of this decision that errors were committed upon the trial of the case which would have merited a reversal of petitioner's conviction had he been able to pursue the proper appellate procedure and in the absence of any power in this Court to supply such deficiency at this date, the time for appeal having expired, or to order a new trial, petitioner is entitled to his release upon the writ heretofore issued unless it can be said that petitioner waived the violation of his constitutional rights by his failure to exhaust the remedies available to him at the time his request for a transcript was denied. In *Fay* v. *Noia,* decided by the Supreme Court of the United States on March 18, 1963, defendant and two others were convicted in the State of New York in 1942. Defendant failed to appeal although his codefendants did so and eventually obtained new trials on the ground that their

confessions had been coerced and their convictions obtained in violation of their constitutional rights. Noia, because of his failure to appeal, could not obtain similar relief in the state courts and filed an application for a writ of habeas corpus in the federal district court, which was denied on the ground his failure to appeal precluded relief under 28 U.S.C. §2254, which provides, in part, that: "An application for a writ of habeas corpus in behalf of a person in custody pursuant to a judgment of a State court shall not be granted unless it appears that the applicant has exhausted the remedies available in the courts of the state. . . ." The decision of the district court was reversed by the Court of Appeals and the reversal affirmed by the Supreme Court, which said: "(2) Noia's failure to appeal was not a failure to exhaust 'the remedies available in the courts of the State' as required by § 2254; that requirement refers only to a failure to exhaust state remedies still open to the applicant at the time he files his application for habeas corpus in the federal court. (3) Noia's failure to appeal cannot under the circumstances be deemed an intelligent and understanding waiver of his right to appeal such as to justify the withholding of federal habeas corpus relief." While the *Noia* case is not directly in point, it is applicable by analogy to the case at bar.

Petitioner is presently confined as a result of the wrongful act of the state in denying to him the rights guaranteed to him by the Fourteenth Amendment of the Constitution of the United States and Sections 10 and 17 of Article III of the Constitution of this State, as implemented by Code, 51-7-7, as amended, and, without deciding that such violation may not in some instances be intelligently waived, we cannot say that, under the circumstances shown by the record, petitioner's failure to resort to the extraordinary remedy of mandamus at a time when effective relief might have been afforded precludes him from the relief sought herein. Therefore, there being no other method by which to secure to petitioner a vindication of his rights, he is entitled to be discharged upon the writ of habeas corpus heretofore awarded.

*Prisoner discharged.*

BERRY, PRESIDENT:

I respectfully dissent from the majority opinion, because it does not appear that the petitioner exhausted all the remedies available to him in connection with obtaining a transcript of the testimony and proceedings at his trial before the time for appeal allowed by the statute expired.

The petitioner knew full well that the remedy that was available to him in order to obtain a transcript for the purpose of appeal, if he really wanted his trial reviewed for alleged error. He wrote the trial court that if the court didn't direct that the transcript be furnished him, he would obtain a writ of mandamus to compel its production, which this Court has held could be done. *Linger* v. *Jennings*, 143 W. Va. 57, 99 S. E. 2d 740. The petitioner could have obtained this writ to compel the production of the transcript for an appeal the same as a defendant who had funds with which to pay for the transcript, because this Court, upon being advised that the petitioner was without funds, would not have required costs, and would have appointed counsel to represent him the same as was done in this proceeding, the only difference being that in the mandamus proceeding, which was available to him, he would not have been allowed to go scot free if guilty and there were no errors committed at the trial; but in this habeas corpus proceeding, instituted after the time for appellate relief has expired, he will be released from the penitentiary regardless of his guilt, and whether or not errors were committed at the trial. All that the cases decided by the Supreme Court of the United States require dealing with this question is that an indigent defendant be afforded the same rights as one who has money with which to pay the necessary costs, and all these rights were present to the petitioner in the case at bar. *Griffin* v. *People of the State of Illinois,* 351 U. S. 12, 76 S. Ct. Rep. 585, 100 L. Ed 891; *Eskridge* v. *Washington State Board of Prison Terms and Paroles,* 357 U. S. 214, 78 S. Ct. Rep. 1061, 2 L. Ed 2d 1269. The Griffin case was a 5-4 decision on the point of whether federal courts had any power at all over states in such matters.

The case of *Griffin* v. *Illinois*, 351 U. S. 12, 76 S. Ct. Rep. 585, 100 L. Ed 891, assumed for purposes of the decision that errors were committed during the trial since the indigent defendant was not provided a free transcript for appellate purposes. It would therefore appear where the means or remedies are available to an indigent defendant to obtain a transcript for an appeal within the time allowed and he does not do so, that it could be assumed that he didn't think there was error committed during his trial, that he had a fair trial, and that he would wait until the time for appeal had elapsed and then rely on the Great Writ where he would not be required to show or prove that error during the trial had been committed by the court.

In the 1958 case of *Eskridge* v. *Washington State Board of Prison Terms and Paroles*, 357 U. S. 214, 78 S. Ct. Rep. 1061, 2 L. Ed 2d 1269, where the indigent defendant was refused in 1935 a free transcript by the trial court and shortly thereafter a writ of mandamus was denied by the Supreme Court of Washington to compel the trial court to furnish the transcript, there the writ of habeas corpus would be proper for relief under the rule of the *Griffin* case, provided it be proper to extend such remedy retroactively as the minority questioned in the *Eskridge* case. In such case the defendant exhausted all his remedies and was denied by the State his right to appeal, which was not due to any failure on his part to pursue his rights or remedies.

For the reasons stated in this dissenting note, I would deny the writ.