CASE *v.* NEBRASKA.

No. 843. Argued April 28, 1965.—Decided May 24, 1965.

*Daniel J. Meador,* by appointment of the Court, 379 U. S. 995, argued the cause and filed a brief for petitioner.

*Melvin Kent Kammerlohr,* Assistant Attorney General of Nebraska, argued the cause for respondent. With him on the brief was *Clarence A. H. Meyer,* Attorney General.

PER CURIAM.

Petitioner sought a writ of habeas corpus in the District Court for Lancaster County, Nebraska, alleging that he was unconstitutionally denied the assistance of counsel when he entered a plea of guilty in that court to a charge of burglary. The trial court dismissed the petition without a hearing, and filed no opinion. The Nebraska Supreme Court affirmed. 177 Neb. 404, 129 N. W. 2d 107. The Supreme Court's opinion recognized that petitioner's allegations, if true, would establish a violation of the Federal Constitution. 177 Neb., at 410, 129 N. W. 2d, at 111. The Supreme Court held, however, that, in Nebraska,

"Habeas corpus is not available to discharge a prisoner from a sentence of penal servitude if the court imposing it had jurisdiction of the offense and of the person charged with the crime, and the sentence was within the power of the court." 177 Neb., at 412, 129 N. W. 2d, at 112. We granted certiorari, 379 U. S. 958, to decide whether the Fourteenth Amendment requires that the States afford state prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees.

After certiorari was granted, the Nebraska Legislature enacted a statute providing a postconviction procedure. Neb. Leg. Bill 836, Seventy-fifth Session, effective April 12, 1965. On its face, the statute provides for a hearing of petitions such as this one, alleging denial of federal constitutional rights. Therefore, the judgment is vacated and the cause remanded to the Nebraska Supreme Court for reconsideration in light of the supervening statute.

*It is so ordered.*

Mr. Justice Clark, concurring.

As the Court points out, we granted certiorari in this case "to decide whether the Fourteenth Amendment requires that the States afford state prisoners some adequate corrective process for the hearing and determination of claims of violation of federal constitutional guarantees." Happily, Nebraska in the interim has adopted just such a procedure thus obviating the necessity of our passing upon the question.

It should be pointed out, however, that as early as 1949 this Court in *Young* v. *Ragen,* 337 U. S. 235, articulated the principle that the States must afford prisoners some "clearly defined method by which they may raise claims of denial of federal rights." *Id.,* at 239. But compare *Mooney* v. *Holohan,* 294 U. S. 103 (1935). In stating

that proposition the Court noted: "The doctrine of exhaustion of state remedies, to which this Court has required the scrupulous adherence of all federal courts . . . presupposes that some adequate state remedy exists. We recognize the difficulties with which the Illinois Supreme Court is faced in adapting available state procedures to [this] requirement . . . . Nevertheless, that requirement must be met." *Young* v. *Ragen, supra,* at 238–239.

Thereafter, the Illinois Post-Conviction Hearing Act was adopted.[1] It was followed by passage of a statute in North Carolina in 1951 which was "modeled" on the Illinois Act.[2] *Miller* v. *State,* 237 N. C. 29, 51, 74 S. E. 2d 513, 528 (1953). Nebraska is the seventh State to adopt such a statute since *Young* v. *Ragen, supra.*[3] There exists in some States a wide variety of procedural techniques that have been used to deal with due process attacks on criminal convictions, *i. e.,* basic common-law remedies such as habeas corpus, *coram nobis* and delayed motions for new trial. But the great variations in the scope and availability of such remedies result in their being entirely inadequate.

As a consequence there has been a tremendous increase in habeas corpus applications in federal courts. Indeed, in the Supreme Court alone they have increased threefold in the last 15 years. This has brought about much public

---

[1] Ill. Rev. Stat., c. 38, §§ 122–1—122–7 (1963).

[2] N. C. Gen. Stat. §§ 15–217—15–222 (Supp. 1963).

[3] Maryland, Maine, Oregon and Wyoming have passed similar legislation. Md. Ann. Code, Art. 27, §§ 645A to 645J (Supp. 1964); Me. Rev. Stat. Ann., c. 126, §§ 1–A to 1–G (Supp. 1963); Ore. Rev. Stat. §§ 138.510–138.680 (1963); Wyo. Stat. Ann. §§ 7–408.1 to 7–408.8 (1963 Cum. Supp.). It should be noted, however, that six other States have adopted similar procedures by rule of court. See Alaska Sup. Ct. Rule 35 (b); Del. Super. Ct. Crim. Proc. Rule 35; Fla. Rules Crim. Proc. 1; Ky. Rules Crim. Proc. 11.42; Mo. Sup. Ct. Rule 27.26; N. J. Crim. Prac. Rules of Super. and County Cts., Rule 3:10A–2.

agitation and debate over proposed limitations of the habeas corpus jurisdiction of federal courts. The necessity for such proposals has been based on various grounds, including that of federal-state comity; inordinate delay in the administration of criminal justice in the state courts; and the heavy burden on the federal judiciary. None of these will survive careful scrutiny.

Strangely enough there has been little light thrown on the necessity for more effective postconviction remedies in the States. In 1958 the Burton Committee [4] reported out a preliminary draft of findings in which it stated

"that the law of state post-conviction process in many states was wholly inadequate to cope with the demands now being placed upon it. In some jurisdictions prisoners were altogether precluded from direct access to the courts. [*Cochran* v. *Kansas,* 316 U. S. 255 (1942); *Dowd* v. *Cook,* 340 U. S. 206 (1951).] . . . In many more, the procedures recognized by state law failed to provide genuine opportunities for testing constitutional issues of the most numerous and important types. The result was that prisoners often failed to obtain hearings on their allegations in the state courts. This, in turn, increased the number of petitions in state and federal courts and was generally productive of frustrations in all persons concerned with the process." [5]

Believing that the practical answer to the problem is the enactment by the several States of postconviction

---

[4] The late Mr. Justice Burton of revered memory was Chairman of the Committee on Post Conviction Remedies of the American Bar Association's Section of Judicial Administration. In August 1958 it circulated a preliminary draft of a study entitled Effective State Post-Conviction Procedures—Their Nature and Essentialities, which was prepared by the Seminar in Criminal Procedure of the University of Chicago Law School under the direction of Professor Francis A. Allen.

[5] *Id.,* at 2–3.

remedy statutes I applaud the action of Nebraska. This will enable prisoners to "air out" their claims in the state courts and will stop the rising conflict presently being generated between federal and state courts. This has proven true in Illinois where it is reported that federal applications from state prisoners dropped considerably after its Act was adopted. I understand that the Illinois Legislature is now considering the enlargement of the five-year limitations period of its present Act to a 20-year period. The consensus is that this will solve the problem entirely in Illinois, which was originally the "sore spot" of the Nation in this regard.

I hope that the various States will follow the lead of Illinois, Nebraska, Maryland, North Carolina, Maine, Oregon and Wyoming in providing this modern procedure for testing federal claims in the state courts and thus relieve the federal courts of this ever-increasing burden.

MR. JUSTICE BRENNAN, concurring.

The petitioner entered his plea of guilty on April 18, 1963, one month after this Court's decision in *Gideon* v. *Wainwright,* 372 U. S. 335, holding the Sixth Amendment guarantee of counsel applicable to state prosecutions by virtue of the Fourteenth Amendment.[1] The Nebraska

---

[1] The petition for habeas corpus reads:

"Petitioner, Paul Vernon CASE, was sentenced to five (5) years in the Nebraska Penal and Correctional Complex on May 3, 1963, A. D.

"Petitioner was 'fast talked' and forcibly coerced into waiving his rights (U. S. Constitutional Rights) to have advice and counsel; to have a Preliminary Hearing, and to plead not-guilty.

"Mr. William D. Blue told Petitioner he, Petitioner, would be charged with being 'An Habitual Criminal' if he did not waive these rights. He, Petitioner was held in Solitary Confinement in City Jail, until such time as he would agree—under cruel and unusual circumstances.

"The basic rights waived by this Petitioner are guaranteed him under the Sixth Amendment of the U. S. Constitution and are so

Supreme Court followed prior Nebraska decisions in holding that, in a habeas corpus action brought by a convicted prisoner, judicial inquiry is limited to the jurisdiction of the convicting court over the offense and over the person of the accused, and to the question whether the sentence imposed was within the power of the court.[2] The State conceded in its response to the petition for certiorari that habeas corpus was unavailable to hear petitioner's claim and that petitioner had no other remedy in the state courts.[3]

On oral argument, counsel appointed for petitioner, see 379 U. S. 995, conceded the relevancy of the new Nebraska postconviction procedure,[4] but contended that petitioner

---

fundamental and essential to a fair trial that they are made obligatory upon the States, *All* states, by way of the Fourteenth Amendment. For reference see Gideon vs. Wainwright in the U. S. Supreme Court. October 1962, Term, No. 155; all Justices concurring."

[2] See *Jackson* v. *Olson,* 146 Neb. 885, 893–894, 22 N. W. 2d 124, 129–130; *In re Dunn,* 150 Neb. 669, 35 N. W. 2d 673; *Hawk* v. *Olson,* 145 Neb. 306, 16 N. W. 2d 181, rev'd 326 U. S. 271, on remand, 146 Neb. 875, 22 N. W. 2d 136.

[3] The response stated: "For all practical purposes, there is no collateral remedy available in the Nebraska courts to a state prisoner who alleges that a violation of his federal constitutional rights occurred in connection with his conviction and whose claim has not yet been considered by the state courts, unless the prisoner's claim is predicated upon a lack of jurisdiction of the sentencing court over the offense or over the person of the accused."

In addition to this concession that the State provided no remedy whatever, petitioner cites *Carlsen* v. *State,* 129 Neb. 84, 261 N. W. 339, as authority for the unavailability of *coram nobis;* Neb. Rev. Stat. § 29–2103 (1964 Reissue), as barring a motion for a new trial; and Neb. Rev. Stat. § 25–1912 (1964 Reissue), as barring an appeal.

[4] The new statute, Neb. Leg. Bill 836, 75th Session, effective April 12, 1965, provides:

"Sec. 1. A prisoner in custody under sentence and claiming a right to be released on the ground that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution

was nevertheless entitled to a declaration that he had been unconstitutionally denied a hearing by the Nebraska courts, and to a reversal of the judgment of the Nebraska Supreme Court and a mandate directing that

of the United States, may file a verified motion at any time in the court which imposed such sentence, stating the grounds relied upon, and asking the court to vacate or set aside the sentence.

"Unless the motion and the files and records of the case show to the satisfaction of the court that the prisoner is entitled to no relief, the court shall cause notice thereof to be served on the county attorney, grant a prompt hearing thereon, determine the issues and make findings of fact and conclusions of law with respect thereto. If the court finds that there was such a denial or infringement of the rights of the prisoner as to render the judgment void or voidable under the Constitution of this state or the Constitution of the United States, the court shall vacate and set aside the judgment and shall discharge the prisoner or resentence him or grant a new trial as may appear appropriate. Proceedings under the provisions of this act shall be civil in nature. Costs shall be taxed as in habeas corpus cases.

"A court may entertain and determine such motion without requiring the production of the prisoner, whether or not a hearing is held. Testimony of the prisoner or other witnesses may be offered by deposition. The court need not entertain a second motion or successive motions for similar relief on behalf of the same prisoner.

"Sec. 2. An order sustaining or overruling a motion filed under the provisions of this act shall be deemed to be a final judgment, and an appeal may be taken to the Supreme Court therefrom as provided for in appeals in civil cases; Provided, that a prisoner may in the discretion of the Supreme Court upon application to the court be released on such recognizance as the Supreme Court shall fix pending the determination of the appeal.

"Sec. 3. The remedy provided by this act is cumulative and is not intended to be concurrent with any other remedy existing in the courts of this state. Any proceeding filed under the provisions of this act which states facts which if true would constitute grounds for relief under another remedy shall be dismissed without prejudice.

"Sec. 4. The district court may appoint an attorney or attorneys, not exceeding two, to represent the prisoners in all proceedings under the provisions of this act and fix their compensation as provided in section 29–1803, Reissue Revised Statutes of Nebraska, 1943."

by some procedure the petitioner's claim be adequately adjudicated.[5]

Petitioner concedes that the Court's practice has been to remit prisoners to their federal habeas corpus remedy. See, *e. g., Jennings* v. *Illinois*, 342 U. S. 104. But he con-

---

[5] The petitioner states in his brief:

"At this stage of the litigation the Court need not pass on the steps to be taken if the Nebraska court should fail to comply with a mandate requiring corrective process for petitioner. It might be suggested, however, that the problem essentially is no different from actual or potential disobedience of the mandate in many other cases remanded by this Court. If on the remand Nebraska failed to make corrective process available, petitioner could return here with a fresh petition for certiorari. This Court could then order petitioner's discharge from custody. That is the ultimate sanction behind the due process requirement of state corrective process. See *Dowd* v. *Cook*, 340 U. S. 206, 209–10."

In support of this contention, the petitioner argues that the Supremacy Clause and the fundamental Fourteenth Amendment right to a hearing constitutionally require the States to afford corrective judicial process to remedy federal constitutional defects in their criminal prosecutions, citing *Frank* v. *Mangum*, 237 U. S. 309, 335; *Moore* v. *Dempsey*, 261 U. S. 86, 91; *Mooney* v. *Holohan*, 294 U. S. 103, 113; *New York ex rel. Whitman* v. *Wilson*, 318 U. S. 688, 690; *Carter* v. *Illinois*, 329 U. S. 173, 175–176; *Foster* v. *Illinois*, 332 U. S. 134, 139; *Taylor* v. *Alabama*, 335 U. S. 252, 272 (concurring opinion); *Young* v. *Ragen*, 337 U. S. 235, 238–239. In addition to the cases cited involving criminal convictions, petitioner cites as other applications of the general principle *General Oil Co.* v. *Crain*, 209 U. S. 211, 228; *Kenney* v. *Supreme Lodge*, 252 U. S. 411, 415; *Ward* v. *Love County*, 253 U. S. 17; *McKnett* v. *St. Louis & S. F. R. Co.*, 292 U. S. 230; *Testa* v. *Katt*, 330 U. S. 386. He also argues that, since Nebraska allowed habeas corpus to attack convictions for jurisdictional defects based on Nebraska law, the Nebraska Supreme Court unconstitutionally discriminated against federal law by refusing habeas corpus for jurisdictional defects based on the Fourteenth Amendment. For the proposition that a State may not discriminate against rights arising under federal laws, petitioner cites *McKnett* v. *St. Louis & S. F. R. Co., supra,* and *Testa* v. *Katt, supra,* and for the proposition that an unconstitutional denial of counsel is a jurisdictional defect relies on *Johnson* v. *Zerbst*, 304 U. S. 458.

tends that substituting federal for state corrective process, instead of directing the State itself to meet its obligation, is a disservice to sound principles of federalism.[6] He points to the vast increase in the number of federal habeas corpus applications by state prisoners as evidence that lack of adequate state procedures has put an intolerable strain on the federal writ and has brought about mounting friction between state and federal courts. See *Henry* v. *Mississippi*, 379 U. S. 443, 453. In short, he contends that if the evolution in the coverage of the Fourteenth Amendment and in the scope of federal habeas corpus, see *Fay* v. *Noia*, 372 U. S. 391, is not to pull the federal judiciary increasingly into state criminal administration, the States must provide broader procedures more hospitable to federal constitutional claims.

The desirability of minimizing the necessity for resort by state prisoners to federal habeas corpus is not to be denied. Our federal system entrusts the States with primary responsibility for the administration of their criminal laws. The Fourteenth Amendment and the Supremacy Clause make requirements of fair and just procedures an integral part of those laws, and state procedures should ideally include adequate administration of these guarantees as well.[7] If, by effective corrective processes,

---

[6] Petitioner refers to *Young* v. *Ragen, supra,* where, in vacating the denial of state habeas corpus, the Court said: "If there is now no post-trial procedure by which federal rights may be vindicated in Illinois, we wish to be advised of that fact upon remand of this case." 337 U. S., at 239. He also cites *Jackson* v. *Denno*, 378 U. S. 368; *Boles* v. *Stevenson*, 379 U. S. 43; *Henry* v. *Mississippi*, 379 U. S. 443; and Note, Effect of the Federal Constitution in Requiring State Post-Conviction Remedies, 53 Col. L. Rev. 1143 (1953).

[7] Dean Griswold of the Harvard Law School, in an address, "The States and Criminal Law," given on May 13, 1965, to the Cleveland Bar Association, said:

"For, after all, the basic responsibility for the enforcement of the criminal law remains with the States. The States are, or should be, as much concerned with high standards as is the Federal govern-

the States assumed this burden, the exhaustion require-
ment of 28 U. S. C. § 2254 (1958 ed.) would clearly pro-
mote state primacy in the implementation of these guar-
antees. Of greater importance, it would assure not only
that meritorious claims would generally be vindicated
without any need for federal court intervention, but that
nonmeritorious claims would be fully ventilated, making
easier the task of the federal judge if the state prisoner
pursued his cause further. See *Townsend* v. *Sain,* 372
U. S. 293, 312–318. Greater finality would inevitably
attach to state court determinations of federal constitu-
tional questions, because further evidentiary hearings on
federal habeas corpus would, if the conditions of *Town-
send* v. *Sain* were met, prove unnecessary.

None can view with satisfaction the channeling of a
large part of state criminal business to federal trial courts.
If adequate state procedures, presently all too scarce,[8]

---

ment. The States should, in my view, welcome the determinations
of the Supreme Court that the high standards prescribed by our
Federal Constitution are to be taken seriously and should be enforced.
What is needed now is for the States to accept this responsibility, and
to adopt means to carry it out. With proper explanation and under-
standing, this can, I believe, be done without impairing our enforce-
ment of the criminal law. When the States do fully meet this respon-
sibility, we will all be better off, and we will more nearly have realized
the potentialities of our Great Federal form of Government."

[8] The Uniform Post-Conviction Procedure Act, 9B Uniform Laws
Ann. 352–359, designed to provide adjudication of federal claims, has
had but slight influence in the States. Arkansas adopted the Uniform
Act in 1957, but repealed it two years later. 2 Acts of Arkansas
(1959) 1160–1161. Six States in addition to Nebraska have adopted
their own statutes. Ill. Rev. Stat., c. 38, §§ 122–1 to 122–7 (1963);
Me. Rev. Stat. Ann., c. 126, §§ 1–A to 1–G (Supp. 1963); Md. Ann.
Code, Art. 27, §§ 645A to 645J (Supp. 1964); N. C. Gen. Stat.
§§ 15–217 to 15–222 (Supp. 1963); Ore. Rev. Stat. §§ 138.510–138.680
(1963); Wyo. Stat. Ann. §§ 7–408.1 to 7–408.8 (1963 Cum. Supp.).
Procedures have been adopted by rule of court in six States. Alaska
Sup. Ct. Rule 35 (b); Del. Super. Ct. Crim. Proc. Rule 35 (a); Fla.
Rules Crim. Proc. 1; Ky. Rules Crim. Proc. 11.42; Mo. Sup. Ct. Rule

were generally adopted, much would be done to remove the irritant of participation by the federal district courts in state criminal procedure. The 1954 Report of the Special Committee on Habeas Corpus of the Conference of Chief Justices pointed the way in urging that "State statutes should provide a postconviction process at least as broad in scope as existing Federal statutes under which claims of violation of constitutional right asserted by State prisoners are determined in Federal courts under the Federal habeas corpus statutes," and recommending provisions for hearing, a record, fact findings and conclusions of law. H. R. Rep. No. 1293, 85th Cong., 2d Sess., p. 7 *et seq.*

These are similar to other suggestions of desirable attributes of a state postconviction procedure which should reduce the necessity for exercise of federal habeas corpus jurisdiction.[9] The procedure should be swift and

---

27.26; N. J. Crim. Prac. Rules of Super. and County Cts., Rule 3:10A–2. Some state courts are apparently broadening existing post-conviction remedies by judicial construction. See, *e. g., People* v. *Huntley,* 15 N. Y. 2d 72, 204 N. E. 2d 179 (1965); *State ex rel. Banach* v. *Boles,* 147 W. Va. 850, 858, 131 S. E. 2d 722, 728 (1963); *Hunt* v. *Warden,* 335 F. 2d 936, 941–942 (C. A. 4th Cir.) (discussing the expanding Maryland remedy). See also the views expressed in *People* v. *Wilson,* 18 App. Div. 2d 424, 430, 239 N. Y. S. 2d 900, 906; *Ex parte Aaron,* 275 Ala. 377, 381–382, 155 So. 2d 334, 337–338 (dissenting opinion); *Donnell* v. *Nash,* 323 F. 2d 850 (C. A. 8th Cir.); *Cobb* v. *Balkcom,* 339 F. 2d 95, 100 (C. A. 5th Cir.). Proposals that the States make their postconviction procedures coextensive with federal habeas corpus are found in Meador, Accommodating State Criminal Procedure and Federal Postconviction Review, 50 A. B. A. J. 928 (1964); National Assn. of Attys. Gen., Conference Proceedings, 1964, pp. 42–43 (remarks of Arthur J. Sills, Atty. Gen. of New Jersey), 149–150 (resolution of the Association); Brennan, Some Aspects of Federalism, 39 N. Y. U. L. Rev. 945, 957–959 (1964).

[9] See Meador, *supra,* 50 A. B. A. J., at 929–930; Brennan, *supra,* 39 N. Y. U. L. Rev., at 958–959; cf. Report No. 23, ABA Section of Criminal Law (Mid-Winter Meeting, Feb. 1965) 5, 7.

simple and easily invoked. It should be sufficiently comprehensive to embrace all federal constitutional claims. In light of *Fay* v. *Noia, supra,* it should eschew rigid and technical doctrines of forfeiture, waiver, or default. See *Douglas* v. *Alabama,* 380 U. S. 415, 422–423; *Henry* v. *Mississippi, supra.* It should provide for full fact hearings to resolve disputed factual issues, and for compilation of a record to enable federal courts to determine the sufficiency of those hearings. *Townsend* v. *Sain, supra.* It should provide for decisions supported by opinions, or fact findings and conclusions of law, which disclose the grounds of decision and the resolution of disputed facts. Provision for counsel to represent prisoners, as in § 4 of the Nebraska Act, would enhance the probability of effective presentation and a proper disposition of prisoners' claims.

But there is no occasion in this case to decide whether due process requires the States to provide corrective process. The new statute on its face is plainly an adequate corrective process. Every consideration of federalism supports our conclusion to afford the Nebraska courts the opportunity to say whether that process is available for the hearing and determination of petitioner's claim.