**Charles ANDERS et al., Appellants,**

**v.**

**Frank A. EYMAN, Warden, Arizona State Prison, Appellee.**

**No. 21921.**

United States Court of Appeals
Ninth Circuit.

Jan. 5, 1968.

Joe W. Contreras, Phoenix, Ariz. (argued), Gerald Francis Sullivan, Phoenix, Ariz., for appellants.

Carl Waag, Asst. Atty. Gen. (argued), Darrell F. Smith, Atty. Gen., James S. Tegart, Asst. Atty. Gen., Arizona, for appellee.

Before MADDEN, Judge, Court of Claims, and DUNIWAY and ELY, Circuit Judges.

ELY, Circuit Judge:

The appellants are fifty-two prisoners of the State of Arizona, confined by reason of state court convictions for a variety of offenses. In a single petition to the District Court, they sought habeas corpus relief under the provisions of 28 U.S.C. § 2241. They prayed, in the alternative, "that a mandate issue directing the State of Arizona, or its Supreme Court, to adopt or enact a statute or rule, affording these petitioners a clearly defined process whereby their respective claims can be adequately adjudicated."

As grounds for their petition, the appellants alleged the following:

"II.

That each is unlawfully detained for the reason that the State of Arizona does not have an adequate corrective legal process for the hearing and determination of their respective claims of violation of federal constitutional guarantees;

"III.

That because of this omission, the State of Arizona has denied each petitioner his rights under the 14th Amendment to the Constitution of the United States * * *."

The appellants attached to their petition, as "Exhibit A," an affidavit in which each, in a separate paragraph, made a representation of his own grievance. These averments were succinctly and very generally set forth. In the numbered paragraph of the affidavit which pertained to him, each appellant swore to the fact of his detention, the offense for which he was convicted, the particular Arizona court which imposed the judgment, and the date of his sentence. There then followed an averment, common to all, that "[p]etitioner has not filed for any post conviction relief in any court of law in the United States asserting the following grounds * * *." Each appellant then followed the preceding representation with a statement of the particular federal right claimed by him to have been infringed. Examples of these statements, none of which was accompanied by allegations of specific supporting details, are as follows: "He was represented by incompetent counsel." "He was coerced to plead guilty after he confessed without the assistance of counsel." "He was not advised of his right to assistance of counsel at the time of his confession which was used against him." The last quoted allegation was made by eight of the appellants. Seven others stated: "He was denied the assistance of counsel at the time of his confession, which was used against him."

The District Court issued an order to the appellee, respondent below, to show cause as to "why the petition for Writ of Habeas Corpus should not be granted or that why hearing should not be held on the merits of said Petition." It thereafter conducted a limited hearing and,

after considering the arguments made by counsel, ordered "that the Petition for Writ of Habeas Corpus is dismissed." We affirm.

In the court below, and here also, the appellants have relied upon Young v. Ragen, 337 U.S. 235, 69 S.Ct. 1073, 93 L.Ed. 1333 (1949), and Case v. Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.Ed.2d 422 (1965). The reliance is misplaced. In Young an Illinois state prisoner sought a writ of habeas corpus by petition to an Illinois state court. The allegations of the petition were, if true, sufficient to raise substantial federal questions. The state court denied the petition without having conducted a hearing, and the United States Supreme Court granted Young's petition for certiorari. In the Supreme Court, the attorney general of Illinois represented that the state court's denial of the petition had been predicated upon the fact that, at the time of the ruling, Illinois did not recognize habeas corpus as an appropriate remedy by which a petitioner could undertake to vindicate federal rights in post-conviction proceedings in the Illinois courts. He contended, however, that under opinions issued by the Illinois Supreme Court subsequent to the state court's denial of Young's petition, it was strongly indicated "that habeas corpus would now be the appropriate Illinois procedure * * *." 337 U.S. at 237, 69 S.Ct. at 1074. Upon the basis of these representations and the Supreme Court's consideration of the Illinois Supreme Court's decisions to which reference was made, Young's case was remanded, along with those of seven other Illinois prisoners, so that Young and the seven others might petition for relief claimed to have been newly made available in the Illinois state courts. It is true that Mr. Chief Justice Vinson wrote that "the requirement that prisoners be given some clearly defined method by which they may raise claims of denial of federal rights * * * must be met." 337 U.S. at 239, 69 S.Ct. at 1075. In the context of the whole opinion, however, and in view of the result that was reached, we do not construe the language as requiring a federal court, in the present proceedings, to order the release of fifty-two convicts unless the government or courts of Arizona quickly prescribe some sought after but undefined procedures, which might or might not entirely fit the ideals of all federal judges who might examine them.

In *Case* a Nebraska state prisoner filed a petition for a writ of habeas corpus in a Nebraska court. The petition was denied. In affirming the denial, the Nebraska Supreme Court held that "[h]abeas corpus is not available to discharge a prisoner from a sentence of penal servitude if the court imposing it had jurisdiction of the offense and of the person charged with the crime, and the sentence was within the power of the court." Case v. State, 177 Neb. 404, 412, 129 N.W.2d 107, 112 (1964), quoted in 381 U.S. at 337, 85 S.Ct. at 1487. The national Supreme Court granted certiorari, after which the Nebraska legislature enacted post-conviction procedural legislation which "on its face" provided "for a hearing of petitions such as this one, alleging denial of federal constitutional rights." 381 U.S. at 337, 85 S.Ct. at 1487. The Supreme Court, in a per curiam opinion, thereupon remanded the cause of *Case* to Nebraska's high court "for reconsideration in light of the supervening statute." 381 U.S. at 337, 85 S.Ct. at 1487. Mr. Justice Clark and Mr. Justice Brennan filed concurring opinions in which they strongly advocated the proposition that all states should "provide broader procedures more hospitable to federal constitutional claims." 381 U.S. at 344, 85 S.Ct. at 1491 (Brennan, J., concurring).

In both *Young* and *Case* the prisoners had instituted their claims for relief in the state court, and their petitions had been denied. In contrast, all of the appellants in our case swore specifically that they had not sought relief from the Arizona courts upon the basis of the claimed constitutional infringement which each, respectively, set forth in their petition. None of the appellants is presently in a position, before having

advanced, in his own behalf, his claim of inadequacy of Arizona procedures, to urge that the state "does not have an adequate legal corrective process." Should any one of them make an appeal to the Arizona courts, supported by sufficient allegations that his conviction was corrupted by infringement of his federal rights, and should Arizona refuse adequately to adjudicate any legitimate federal issue which is presented, then, and not until then, should the doors of the federal courts be appropriately opened. It has been made crystal clear that a state's denial of post-conviction relief to one of its prisoners creates no barrier in the avenue of federal remedies. Townsend v. Sain, 372 U.S. 293, 83 S.Ct. 745, 9 L.Ed.2d 770 (1963). See also Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); United States ex rel. Walker v. Fogliani, 343 F.2d 43 (9th Cir. 1965). While the fifty-two Arizona prisoners here involved would apparently prefer that their destinies rest upon factual determinations made by Arizona courts, it is not unlikely, in view of the respect accorded by federal courts to sufficient factual determinations by state courts, that state prisoners in many regions would prefer that there be no state remedy at all.

We do not intend to insinuate that, as claimed by the appellants, Arizona procedures are not adaptable and adequate for the disposition of the constitutional violation which each appellant contends was committed in connection with his conviction. Indeed, our tentative opinion is to the contrary. The Arizona Constitution expressly provides: "The Supreme Court shall have: 1. Original jurisdiction of habeas corpus * * * and other extraordinary writs to state officers." Arizona Constitution art. 6, § 5. Moreover, where Arizona state prisoners have contended in Arizona post-conviction proceedings that their federal rights were violated, the Arizona Supreme Court has directed its lower courts to conduct hearings to resolve the factual disputes created. See State v. Kruchten, 101 Ariz. 186, 417 P.2d 510 (1966), cert. denied, 385 U.S. 1043, 87 S.Ct. 784, 17 L.Ed.2d 687 (1967); State v. Janovic, 101 Ariz. 203, 417 P.2d 527 (1966), cert. denied, 385 U.S. 1036, 87 S.Ct. 777, 17 L.Ed.2d 683 (1967). In these two cases, the common law writ of coram nobis, rather than habeas corpus, was issued. The adequacy of the remedy afforded by the state, not its name, is the only consideration which invites the concern of the federal courts.

Affirmed.