**UNITED STATES of America ex rel. Fred WILLIAMS, Petitioner,**

v.

**Alfred T. RUNDLE, Respondent.**

**Misc. No. 3737.**

United States District Court
E. D. Pennsylvania.

July 25, 1968.

John W. Packel, Philadelphia, Pa., for petitioner.

James Douglas Crawford, Philadelphia, Pa., for respondent.

## MEMORANDUM OPINION AND ORDER

FULLAM, District Judge.

On January 7, 1967, the petitioner was sentenced to concurrent terms of imprisonment aggregating not less than five years nor more than twenty years, following his conviction, in a non-jury trial, of rape, robbery, aggravated assault and battery and attempted sodomy. He appealed, but the conviction was upheld per curiam, without opinion, Com-

monwealth v. Williams, 209 Pa.Super. 772, 231 A.2d 187 (1967), and allocatur was subsequently denied by the Pennsylvania Supreme Court.

The prosecution's evidence at trial disclosed a particularly outrageous mass-rape, beating, and near-murder of a middle-aged school-crossing guard, mother of four children, during a six-hour period on October 23, 1965. The victim was forcibly abducted and assaulted in a school yard by a group of five youths, who later transferred her to a vacant house and repeatedly assaulted and beat her; eight other youths also participated during the latter stages of the crime. Both the victim and a co-defendant, Joseph Charles, positively identified the petitioner as one of the original five participants and one of the ringleaders of the entire episode.

The constitutional validity of petitioner's conviction is now challenged on two grounds: (1) refusal to disclose to defense counsel written memoranda of verbal statements made by the victim to the police shortly after the crime; and (2) refusal to permit cross-examination of the co-defendant as to whether he had been promised leniency for testifying against the petitioner. It is claimed that the rulings complained of amounted to a denial of the petitioner's Sixth Amendment rights of confrontation of witnesses, Pointer v. Texas, 380 U.S. 400, 403, 85 S.Ct. 1065, 13 L.Ed.2d 923 (1965); Turner v. Louisiana, 379 U.S. 466, 85 S.Ct. 546, 13 L.Ed.2d 424 (1965), and rendered petitioner's trial so unfair as to amount to a denial of due process of law.

■ With respect to the alleged verbal statements by the victim to the police, it is sufficient to note that the record does not establish the existence of any written memoranda of these statements. Petitioner's claim on this point assumes that when, pursuant to normal police routine, the victim was interviewed by police officers shortly after the alleged crime, one or more of these officers must have included a summary of her statements in some written memorandum or report. It is not suggested that the prosecutrix signed or approved any such memorandum, or that any substantially verbatim transcript of her alleged oral statements was made; in short, it is clear that any memoranda which may be in existence would not fall within the provisions of the "Jencks Act", 18 U.S.C.A. § 3500(e). Compare Palermo v. United States, 360 U.S. 343, 79 S.Ct. 1217, 3 L.Ed.2d 1287 (1959); United States v. Hoffa, 349 F.2d 20 (6th Cir. 1964). Since the record does not affirmatively establish the existence of any such memoranda, let alone the contents thereof, there is no basis for assuming that the supposed memoranda would have been of any material assistance in cross-examination of the prosecutrix. Compare Giles v. Maryland, 386 U.S. 66, 87 S.Ct. 793, 17 L.Ed.2d 737 (1967). Moreover, counsel had the benefit of the prosecutrix's testimony at the preliminary hearing and at the trials of other co-defendants, as well as his own cross-examination of the prosecutrix on these other occasions; and he had access to the "history" given when the victim was taken to the hospital shortly after the crime. It seems extremely unlikely that police memoranda made at about the same time from the same sources would have contained significantly discrepant information.

Be all this as it may, in the absence of any showing of the existence or contents of the alleged memoranda, the petitioner has obviously failed to sustain his burden of proof.

The remaining point presents more serious problems. A co-defendant, Joseph William Charles, entered a plea of guilty to his participation in the crimes alleged. The plea was entered about two months before the petitioner's trial, but Charles had not been sentenced at the time of the petitioner's trial. In the course of the entry of the guilty plea, Charles had been admonished at consid-

erable length by the sentencing judge [1] as to the desirability of his being willing to testify against his co-defendants. In that proceeding, the Commonwealth was represented by the same Assistant District Attorney who conducted the trial of the petitioner. The record of Charles' guilty-plea hearing includes the following:

"MR. SPRAGUE [the Assistant District Attorney]: * * * I have been advised that since this proceeding started, as Your Honor heard, no offer, no deal, or commitment of any sort was offered to this defendant, and the Commonwealth was ready to proceed to trial at this time.

"I have been advised that the defendant now desires to cooperate with the Commonwealth and to testify for the Commonwealth, at the same time reiterating that he will have no deal or commitment. And I would ask at this time that sentence be deferred.

"THE COURT: I would like to ask has he named or have you been able to ascertain the identities of the other young men in this?

"MR. SPRAGUE: May I say that other persons are under arrest and are awaiting trial. I have told counsel and the defendant if the court sees fit to defer sentence, I am going to have Mr. Alessandroni and Detective Winchester speak with the defendant and find out the extent of his testimony and his availability to the Commonwealth.

\* \* \* \* \* \*

"THE COURT: * * * I am acceding to the District Attorney's request to defer sentence * * * you will have an opportunity to reduce some of this. No promise has been made to you by anyone up to now and no promise by this Court, but a suggestion to you that you ought to be man enough to name the other five. Will you do so?

"THE DEFENDANT: Yes.

"THE COURT: You promise the Court you are going to name those five men to this detective and do it today. Give them every bit of names, addresses, nicknames and everything else and what they did. It may save you many, many long years. Don't involve anybody if it isn't true but tell the truth on all of them. If you do, you will be given consideration."

Thus, when Charles testified against the petitioner, the district attorney had specifically requested that his sentencing be deferred; the district attorney had indicated that only if sentence were deferred would he be interested in learning what Charles would be willing to testify to; and the sentencing judge had made "a suggestion" that Charles should name the other men involved, and told the defendant that if he did "it may save you many, many long years" and that if he were to "tell the truth on all of them" he would be "given consideration."

Nevertheless, a few weeks later, at the petitioner's trial, Charles was asked on cross-examination

"Q. Do you expect to derive some benefit from testifying in this case?"

And his answer was "No." On three occasions, defense counsel questioned Charles as to what the sentencing judge had stated to him at the time the guilty plea was entered, but on each occasion the district attorney objected and the objection was sustained. The three questions were, specifically:

"And you were told by the sentencing judge if you did testify in these cases he would take that into consideration on your sentence, did he not?"

"Were you told anything by the judge before whom you had entered your guilty plea in reference to your testimony in these cases?"

"Were you not told by Judge Alexander that he would take into consid-

---

1. Judge Alexander. Judge Guerin presided at petitioner's trial.

eration your testimony in other cases in sentencing you?"

 There would seem to be little doubt that the trial rulings, sustaining the Commonwealth's objections to these questions, were erroneous. The testimony of an admitted accomplice is subject to very broad cross-examination. Commonwealth v. Gable, 171 Pa.Super. 468, 90 A.2d 301 (1952). Cross-examination as to whether a witness expects to obtain preferential treatment for testifying against a defendant should always be permitted. United States v. Hogan, 232 F.2d 905 (3d Cir. 1956). The witness was permitted to testify that he did not expect to receive any benefit for testifying in the case, but defense counsel should surely have been permitted to test the accuracy of this answer by further cross-examination as to what was said in that regard at the time the guilty plea was entered.

 The Commonwealth justified its objections at trial on the novel ground that what the sentencing judge had said to Charles was inadmissible hearsay, and, (perhaps), on the further ground that the "best evidence" of what the sentencing judge had said would be the actual record of the proceedings. I believe the fallacy in these arguments is self-evident. The hearsay rule is not involved, since the fact of the sentencing judge's statement, rather than the truth of what it contained, was the relevant item sought. And I am aware of no decision which holds that a witness may not be questioned about what occurred in another trial merely because, if a dispute had arisen as to just what was stated at the earlier proceeding, the actual transcript of the proceedings might be regarded as the best evidence thereof.

 I am therefore entirely convinced that the cross-examination of the witness Charles was unduly curtailed. But it does not necessarily follow that the error was of such magnitude as to render the trial constitutionally infirm. The judge who tried the petitioner did know that Charles had first denied his complicity, but had changed his plea to guilty when his case was called for trial; and that sentencing of Charles had been deferred. As an experienced trial judge, he undoubtedly realized the kinds of motivations and pressures that arise in such a situation.[2] I am not persuaded that the curtailment of the cross-examination of Charles rendered the trial so unfair as to amount to a lack of due process; nor am I persuaded that the curtailment of this cross-examination was of sufficient magnitude to amount to a denial of the right of confrontation within the meaning of the doctrine of Pointer v. Texas, *supra*.

 In an addendum to his brief, filed after the hearing in this case, counsel for the petitioner suggests that the record of petitioner's trial, together with the record of the guilty-plea hearing of Charles, makes out a case of the knowing use of perjured testimony. Cf. Napue v. Illinois, 360 U.S. 264, 79 S.Ct. 1173, 3 L.Ed.2d 1217 (1958); Nash v. Illinois, 389 U.S. 906, 88 S.Ct. 222, 19 L.Ed.2d 223 (1967) (dissenting opinion denial of cert.). However, this issue has never been raised in any state court proceeding. I am not aware of any reason for excusing the petitioner from compliance with the requirement that he first exhaust all available remedies under state law. 28 U.S.C.A. § 2254(c); Fay v. Noia, 372 U.S. 391, 83 S.Ct. 822, 9 L.Ed.2d 837 (1963); Case v. Nebraska, 381 U.S. 336, 85 S.Ct. 1486, 14 L.

2. The record does not disclose the extent of the leniency actually received by the co-defendant Charles. The Commonwealth's brief asserts that he was sentenced to a term of five to ten years (as compared with the five to twenty-year sentence given the petitioner); but the petitioner's brief asserts that Charles received an indeterminate sentence to a reform school, under the provisions of which his maximum imprisonment could not exceed six years. Neither side offered any evidence on the point, and I have made no attempt to resolve these conflicting statements.

Ed.2d 422 (1965). The same rationale precludes present consideration of the related contention that the prosecutor's conduct was tantamount to suppression[3] of evidence favorable to the defense. Giles v. Maryland, *supra.*

Under all of the circumstances of this case, I consider it appropriate to certify that there is probable cause for appeal.

### ORDER

And Now, this 25th day of July, 1968, it is hereby ordered that the petition of Fred Williams for a writ of habeas corpus is hereby denied. Certificate of probable cause for appeal is granted.

---

3. It is not clear on this record whether at the time of trial the petitioner and his counsel knew of the statements of the prosecutor and the sentencing judge at Charles' plea hearing.