IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT KNOXVILLE
September 24, 2019 Session

## NICHOLAS TODD SUTTON v. STATE OF TENNESSEE

**Appeal from the Criminal Court for Morgan County**
**No. 7555      Jeffrey H. Wicks, Judge**

_____

### No. E2018-00877-CCA-R3-PD
_____

In 1986, the Petitioner, Nicholas Todd Sutton, was convicted of the January 15, 1985 first degree murder of Carl Estep, which occurred while both were inmates at the Morgan County Regional Correctional Facility. At sentencing, the jury imposed the death penalty based upon the weight of three aggravating circumstances. The Petitioner's conviction and death sentence were affirmed on appeal. *State v. Sutton*, 761 S.W.2d 763 (Tenn. 1988), *cert. denied*, 497 U.S. 1031 (1990). The Petitioner unsuccessfully pursued post-conviction relief, the denial of which was affirmed by this court. *Nicholas Todd Sutton v. State*, No. 03C01-9702-CR-00067, 1999 WL 423005 (Tenn. Crim. App. June 25, 1999), *perm. app. denied* (Tenn. Dec. 20, 1999), *cert. denied*, 530 U.S. 1216 (2000). The Petitioner then unsuccessfully pursued federal habeas corpus relief, the denial of which was affirmed by the Sixth Circuit Court of Appeals. *Sutton v. Bell*, 645 F.3d 752 (6th Cir. 2011), *cert. denied*, 566 U.S. 933 (2012).

On June 8, 2016, the Petitioner filed a motion to reopen post-conviction proceedings, alleging that the United States Supreme Court's decision in *Johnson v. United States*, 576 U.S. __, 135 S. Ct. 2251 (2015), announced a new constitutional rule requiring retrospective application to reopen post-conviction proceedings that invalidates the prior violent felony aggravating circumstance in his case. *See* T.C.A. § 40-30-117(a)(1) (2018). Based upon the post-conviction court's finding that the Petitioner had stated a colorable claim, the Petitioner amended the post-conviction petition with additional claims. *Id*. §§ 40-30-106 (2018), -107 (2018), 117(b) (2018). Upon prehearing consideration, the post-conviction court summarily denied relief. *Id*. § 40-30-109(a) (2018). The Petitioner now appeals from the post-conviction court's order summarily denying relief on the amended post-conviction petition and argues that (1) the decision in *Johnson* invalidated the prior violent felony aggravating circumstance; (2) the post-conviction court's summary denial following the amendment of the post-conviction petition was improper because (a) the United States Supreme Court's decision in *Hurst v. Florida*, 577 U.S. __, 136 S. Ct. 616 (2016), invalidated the death sentence; (b) the Petitioner's appearance in shackles before the jury at the original trial violated his due

process rights; (c) the jury selection process produced a jury skewed in favor of a death sentence; (d) trial counsel rendered the ineffective assistance of counsel relative to the investigation and the presentation of evidence concerning the Petitioner's mental health; (e) the State committed prosecutorial misconduct when placing the knives on trial counsel's table within reach of the Petitioner and his codefendants, causing officers to "reach[] for their weapons" and trial counsel were ineffective for not seeking a mistrial based upon the display of the knives; (f) the Petitioner's experience of mistreatment and unsafe conditions while incarcerated at Brushy Mountain State Prison and Morgan County Regional Correctional Facility violated the Eighth Amendment's prohibition against cruel and unusual punishment; (g) the death sentence in this case was arbitrarily sought following the State's offering a sentence of life imprisonment during pretrial plea negotiations; (h) the State's reliance on a prior murder conviction that was committed when the Petitioner was eighteen years of age to establish the prior violent felony aggravating circumstance violated the Eighth Amendment; (3) the Assistant District Attorney General's previous representation of the victim, Carl Estep, creates an actual conflict of interest and an appearance of impropriety requiring disqualification and a rehearing of the post-conviction proceedings; and (4) the cumulative errors render unconstitutional the imposition of the death penalty in this case. Following our review, we affirm the judgment of the post-conviction court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgment of the Criminal Court Affirmed**

ROBERT H. MONTGOMERY, JR., J., delivered the opinion of the court, in which THOMAS T. WOODALL and ROBERT W. WEDEMEYER, JJ., joined.

Justyna Garbaczewska Scalpone, Post-Conviction Defender; Deborah Y. Drew, Deputy Post-Conviction Defender; Andrew L. Harris, Assistant Post-Conviction Defender; and Lucie T. Butner, Assistant Post-Conviction Defender, Nashville, Tennessee, for the appellant, Nicholas Todd Sutton.

Herbert H. Slatery III, Attorney General and Reporter; Andree Sophia Blumstein, Solicitor General; James E. Gaylord, Senior Assistant Attorney General; Russell Johnson, District Attorney General; and Robert Edwards, Assistant District Attorney General, for the appellee, State of Tennessee.

# OPINION

## Factual and Procedural Background

A Morgan County Criminal Court jury convicted the Petitioner of the January 15, 1985 first degree murder of Carl Estep. The evidence presented at trial was summarized by the Tennessee Supreme Court:

The defendant Sutton and co-defendants Freeman and Street were residents of Guild 6 at the Morgan County Regional Correctional Facility on the day of the murder. The victim, Carl Estep, was a resident of Guild 5, which was located next to Guild 6. The facility is composed of one story buildings, guilds, which are equivalent to dormitories. Each guild has approximately 30 cells located along the outer walls. These cells are approximately 5' x 10' and have a wooden door with a vertical window. The cells contain a bunk bed for two inmates and have a toilet and sink. In the center of the guild is the correctional officer's station which is totally enclosed with glass. Also in the center of the guild are tables and benches and open space for the inmates, referred to as the dayroom area. The correctional officer, from his station in the center of the building, can observe the cells of the inmates. On January 15, 1985, when Carl Estep was murdered, there was no correctional officer in Guild 5 between 9:30 and 10:00 a.m. During a routine "shakedown" after 10:00 a.m. correctional officers found the body of Estep lying on the lower bunk of his cell in Guild 5. There were signs of a struggle and blood was observed on the wall, the bed covers and on Estep's body. Attempts made to revive Estep proved unsuccessful. The entire facility was then "locked down," and all inmates in Guild 5 were interviewed.

Estep, who had been serving a sentence for child molesting, had been stabbed thirty-eight times in the chest and neck. Most of the wounds were superficial, but nine were potentially fatal, having penetrated Estep's lungs, his vena cava and carotid artery. The examining pathologist testified that this latter wound would have caused death in a matter of minutes. There were seven defensive wounds on Estep's hands and right arm and a wound to the back of his head caused by a blow. It was the opinion of the pathologist that from the size of the wounds two knives had been used by Estep's attackers. On the bottom bunk investigating officers found two homemade knives, called "stickers" in prison jargon, which matched the wounds on Estep's body. A later investigation of the cell uncovered a third knife hidden under a lamp beside Estep's bed.

The testimony of four inmates, sometimes contradictory and evasive, linked the defendant Sutton to the murder. The first to testify was Harold Meadows, a resident of Guild 5. He testified that he was sitting in the dayroom area when he saw Sutton and Street enter the guild and go straight to Estep's cell. He stated that each day between 9:30 a.m. and shortly after 10:00 a.m. there was a period of five to ten minutes when no guards were in Guild 5 due to a duty change. It was during this time on January 15, that he observed Sutton and Street enter the guild. When they entered Estep's cell, his roommate immediately came out and shortly thereafter the volume of the tv or radio increased, and Meadows heard a scream, and Sutton and Street came out. When questioned by correctional officers immediately after the incident, he told them what he had seen and identified Sutton and Street from a photographic line-up. Meadows further testified that on Sunday, January 13, he had seen Estep having a "physical discussion" with Sutton and Street, during which Sutton held a knife to Estep's throat.

Another resident of Guild 5, Estel Green, testified that he was standing in front of the door to his cell (# 1), right next to Estep's cell (# 2), when he saw Sutton and another inmate go inside Estep's cell. Green then went into his cell. When he came back out, he saw the other men in the guild moving toward the back away from Estep's cell. Green moved away with them and heard Estep "holler out. He said, 'Don't do that; please don't do that.' [A]nd then he hollered louder, he hollered, 'Somebody help me; somebody please help me.' [A]nd that was all I heard." Green was not able to see who left Estep's cell.

Ralph Edward Scates was a resident of Guild 3, but he worked as a laundry man in Guild 1. Scates testified that he had a casual conversation with Street while Street was confined to Guild 1 for investigative purposes after the killing. Street admitted to Scates that "he [Street] cut him . . . he stuck him, cut his throat." Street said that homemade knives had been used and that he had tried to flush his down the commode in his cell in Guild 6. Scates stated that Sutton had told him, "The SB got exactly what he deserved."

The last inmate to testify for the State was Cary Scoggins. He testified that Estep was a marijuana dealer at the facility and had sold defendants some "bad merchandise" and had refused to refund the defendants' money. He testified that after the defendants took Estep's watch and some other articles, Estep had threatened to kill Sutton. Scoggins, a resident of Guild 6, happened to be in Guild 5 on the morning

- 4 -

of January 15 between 9:30 a.m. and 10:30 a.m. He stated that he saw Sutton, Street and Freeman come into the guild and enter Cell 2, Estep's cell. He looked through the window in the door of Estep's cell, a vertical window four inches by thirteen inches and saw all three defendants standing in front of the bunk bed with their backs to the window. He saw Estep try to get up from the bottom bunk and Sutton and Freeman pulled knives. Sutton started to stab Estep, who screamed. Scoggins stated that Sutton "just kept on stabbing" about sixteen times. The three defendants then washed their hands in the sink. Scoggins then moved away from the door and left the guild before the defendants did.

In order to contradict Scoggins' testimony, the defendant Freeman presented the testimony of Gary Lumbert, Scoggins' cellmate. Lumbert testified that Scoggins was working with him in the prison library at the time Estep was murdered.

The State recalled James Worthington, the administrative assistant to the warden at the time of the killing, and he testified that he had investigated the murder. He stated that Lumbert had told him that he was present in Guild 6 immediately after Estep had been killed, and that he observed Sutton and Street enter the guild, remove their clothes, and place their clothes in the laundry. Lumbert also told Worthington that Sutton bragged "about stabbing Carl Estep twenty-some times."

On January 15, two garbage bags found outside Guild 8 were brought to Worthington, one containing trash and the other prison clothing. A telephone pass for defendant Freeman was found in one pair of the pants. F.B.I. analysis of the debris from the clothing in the garbage bag revealed a hair consistent with that of the victim on a pair of button-fly jeans and a hair consistent with that of Charles Freeman on one of the jackets. A forensic serologist employed by the T.B.I. testified that she was able to identify a human blood stain matching the victim's blood type on the sleeve of one of the jackets, one of the knives and a work shirt. She also found human blood on one of the jackets, a pair of zipper-fly blue jeans and an elastic bandage. Tests were inconclusive as to whether human blood was on the other knife.

*Sutton*, 761 S.W.2d at 765-66. The jury acquitted Freeman. Street was convicted of first degree murder. At the penalty phase of the Petitioner's trial, the jury imposed the death penalty based upon its finding of three aggravating circumstances: (1) that the Petitioner was previously convicted of one or more felonies which involved the use or threat of

violence to the person, T.C.A. § 39-2-203(i)(2) (repealed); (2) that the murder was especially heinous, atrocious and cruel in that it involved torture or depravity of mind, *Id.* § 39-2-203(i)(5) (repealed); and (3) that the murder was committed by the defendant while he was in lawful custody or in a place of lawful confinement, *Id.* § 39-2-203(i)(8) (repealed).

On appeal to the Tennessee Supreme Court, the Petitioner challenged the sufficiency of the evidence to support the conviction and the aggravating circumstances. He also challenged the constitutionality of Tennessee's death penalty statutes, alleged that prosecutorial misconduct surrounding the State's notice of witnesses and placement of knives at defense counsel table deprived him of a fair trial, and raised evidentiary issues concerning the trial court's admitting bloody clothing and permitting the State to present Mr. Worthington as a rebuttal witness. The court affirmed the Petitioner's conviction and death sentence. *Sutton*, 761 S.W.2d at 764.

On December 14, 1990, the Petitioner filed a petition for post-conviction relief. Following hearing, the post-conviction court denied relief. On appeal, the Petitioner mounted constitutional challenges to his conviction and death sentence including allegations that prosecutorial misconduct occurred in the discovery process, that the trial court failed to adequately monitor the discovery process, that excessive courtroom security deprived him of a fair trial, that the State presented false testimony concerning prison conditions, that the State presented perjured testimony through Mr. Lumbert, that the State committed violations of *Brady v. United States*, 397 U.S. 742 (1970), and *Giglio v. United States*, 405 U.S. 150 (1972), and that the unsafe conditions in Tennessee Department of Correction facilities rendered his death sentence fundamentally unfair. The Petitioner also argued that trial counsel were ineffective for failing to challenge the lawful custody aggravating circumstance, adequately investigate and present mitigation evidence concerning the Petitioner's childhood, adequately investigate and present mitigation evidence concerning the Petitioner's mental health history, present an adequate and effective opening statement and closing argument at the penalty phase of the trial, effectively utilize co-counsel, object to jury instructions, object to instances of prosecutorial misconduct, and raise issues on direct appeal. The Petitioner also raised numerous challenges to the constitutionality of Tennessee's death penalty statute. Upon full consideration and review, this court affirmed the post-conviction court's denial of relief. *Nicholas Todd Sutton*, 1999 WL 423005, at *32.

The Petitioner next filed a petition for a writ of habeas corpus in federal district court, alleging four ineffective assistance of trial counsel claims. He argued that counsel failed to object to courtroom security issues, which included (1) the presence of ten uniformed officers and (2) the officers' reaching for weapons when the prosecutor placed the knives on the defense table, causing defense counsel to startle. The Petitioner also

argued that counsel failed to object to three instances of prosecutorial misconduct, including (1) the prosecutor's guilt phase comment that the Petitioner and his codefendants were guilty based upon their immediate arrest by prison guards, (2) the prosecutor's guilt phase comment characterizing a defense witness's testimony as an affirmation that inmates "live by their own rules," and (3) the prosecutor's future dangerousness statement made during closing argument during the penalty phase. The Petitioner argued that counsel failed to object to the trial court's jury instruction concerning the heinous, atrocious, and cruel aggravating circumstance and that counsel failed to adequately investigate and present mitigating evidence concerning the violence in the prison system and the Petitioner's background. The Sixth Circuit Court of Appeals affirmed the district court's denial of relief. *Sutton*, 645 F.3d at 765.

## Motion to Reopen Post-Conviction Petition

On June 8, 2016, the Petitioner filed a motion to reopen his post-conviction petition alleging that the Supreme Court's decisions in *Johnson, Glossip v. Gross*, 576 U.S. __, 135 S. Ct. 2726 (2015), and *Obergefell v. Hodges*, 574 U.S. __, 135 S. Ct. 2584 (2015), announced new constitutional rules requiring retrospective application that render his death sentence unconstitutional. The State filed a response in opposition to the motion to reopen, arguing that Tennessee's prior violent felony aggravating circumstance survives scrutiny under *Johnson*. The State further argued that the Petitioner could not claim relief by relying on the dissent in *Glossip* and that *Obergefell* was simply not applicable to death penalty litigation.

On October 4, 2016, the post-conviction court denied the motion to reopen as to the *Glossip* and *Obergefell* claims, but it preliminarily granted the motion to reopen as to the *Johnson* claim. *See* T.C.A. § 40-30-117(b) ("The motion shall be denied unless the factual allegations, if true, meet the requirements of subsection (a). If the court grants the motion, the procedural, relief and appellate provisions of this part shall apply."); *Id*. § 40-30-107 (requiring the post-conviction court to enter a preliminary order if the pleading "is not dismissed upon preliminary consideration"). In the preliminary order, the post-conviction court directed the Petitioner to "investigate all possible constitutional grounds for relief for the purpose of filing an amended petition if necessary . . . [and] raise any additional issues counsel deems necessary."

On February 2, 2017, the Petitioner filed an amended petition for post-conviction relief reasserting the *Johnson* claim. The Petitioner also alleged seven additional claims: (1) that the Supreme Court's decision in *Hurst* announced a new rule of constitutional law requiring retrospective application that, if applied to Tennessee's thirteenth juror rule, invalidated the death sentence; (2) that being shackled during trial within view of the jury violated his right to a fair trial; (3) that the jury selection process created a jury

skewed to impose a death sentence; (4) that trial counsel were ineffective for failing to investigate and present mental health evidence in mitigation at the penalty phase of the trial; (5) that the State committed prosecutorial misconduct by placing the knives on the defense table and that the resulting police response deprived the Petitioner of a fair trial; (6) that the mistreatment suffered by the Petitioner when incarcerated, coupled with the death sentence, violated the Eighth Amendment; and (7) that Tennessee's death penalty system was broken and violated the Eighth Amendment.

At a status hearing held on March 6, 2017, the post-conviction court noted that the October 4, 2016 order "maybe wasn't worded exactly as narrow as I wanted it but I thought we were going to basically address the issues related to the ruling in *Johnson*." The court further stated that any additional allegations would have to be "ones that weren't waived or [outside] the statute of limitations or that had been previously determined." The court advised the parties that it would "put down a preliminary order that may narrow the issues." *See id*. §§ 40-30-106, -107.

On July 27, 2017, the State filed a response in opposition to the amended petition, asserting that *Johnson* was inapplicable to Tennessee's prior violent felony aggravating circumstance and that the additional allegations raised by the petition were "outside the scope of the [post-conviction court's October 4, 2016] order."

On March 12, 2018, the Petitioner filed a supplemental petition for post-conviction relief, adding that the death sentence was arbitrary, having been imposed after the State's offer of a life sentence during pretrial plea negotiations and that the prior violent felony aggravating circumstance could not stand because the prior violent felony relied upon was committed by the Petitioner when he was eighteen years old. *See Roper v. Simmons*, 543 U.S. 551 (2005).

On April 12, 2018, the post-conviction court entered an order summarily denying relief. The court held that *Johnson* was inapplicable to Tennessee's prior violent felony aggravator and denied relief as to that claim. The court held that the additional claims were beyond the scope of the preliminary order but reviewed them on the merits. The court determined that *Hurst* did not announce a new constitutional rule and that the remaining claims had been waived or previously determined. The court did not make any findings concerning the two additional claims included in the Petitioner's March 12, 2018 supplemental petition. On May 7, 2018, the Petitioner filed a motion to reconsider the post-conviction court's order, alleging for the first time that the Assistant District Attorney General's previous representation of the victim required the prosecutor's disqualification from the post-conviction proceedings. The Petitioner filed a timely notice of appeal.

On appeal, the Petitioner argues that he is entitled to relief as to all the claims raised in the amended and supplemental post-conviction petitions. Additionally, he contends that the post-conviction court deprived him of a full and fair hearing by summarily denying relief. The Petitioner also argues that the Assistant District Attorney General's previous representation of the victim, while in private practice and years before his employment with the District Attorney General's Office, during the prosecution that led to the victim's child molestation conviction and incarceration at the Morgan County Regional Correctional Facility constitutes an actual conflict of interest requiring a new hearing on the post-conviction petition. The State argues that the *Johnson* and *Hurst* claims do not provide any relief from the Petitioner's death sentence, that the remaining claims are not cognizable in a motion to reopen a post-conviction petition, and that the Petitioner cannot prevail on the conflict of interests allegation because he failed to file a timely motion to disqualify the Assistant District Attorney General in the trial court and that this court properly denied the Petitioner's motion to supplement or remand the case concerning the conflict of interests issue.

**Analysis**

This court recently analyzed the parameters of a post-conviction court's review of a motion to reopen and a subsequent amendment to a first post-conviction petition made pursuant to a post-conviction court's granting a motion to reopen. *See Harold Wayne Nichols v. State*, No. E2018-00626-CCA-R3-PD, 2019 WL 5079357 (Tenn. Crim. App. Oct. 10, 2019), *perm. app. denied* (Tenn. Jan. 15, 2020). Concerning the general availability of post-conviction relief in Tennessee, this court explained

> In *Case v. Nebraska*, 381 U.S. 336, 85 S. Ct. 1486, 14 L.Ed.2d 422 (1965), the United States Supreme Court recommended that the states implement post-conviction procedures to address alleged constitutional errors arising in state convictions in order to divert the burden of habeas corpus ligation in the federal courts. In response, the Tennessee legislature passed the Post-Conviction Procedure Act whereby a defendant may seek relief "when a conviction or sentence is void or voidable because of the abridgement of any right guaranteed by the Constitution of Tennessee or the Constitution of the United States." T.C.A. § 40-30-103. In its current ideation, the Post-Conviction Procedure Act "contemplates the filing of only one (1) petition for post-conviction relief. In no event may more than one (1) petition for post-conviction relief be filed attacking a single judgment." T.C.A. § 40-30-102(c). While "any second or subsequent petition shall be summarily dismissed," a petitioner may seek relief on the basis of claims that arise after the disposition of the initial petition by filing a motion to reopen the post-conviction proceedings "under the limited

circumstances set out in § 40-30-117." *Id.*; *see Fletcher v. State*, 951 S.W.2d 378, 380 (Tenn. 1997).

*Harold Wayne Nichols*, 2019 WL 5079357, at *3. Thus, while Tennessee provides for only one petition for post-conviction relief, there are limited circumstances whereby a petitioner may allege later arising claims via a motion "to reopen the first post-conviction petition." T.C.A. § 40-30-117(a). As relevant in this case, a motion to reopen the first petition should be granted when "[t]he claim in the motion is based upon a final ruling of an appellate court establishing a constitutional right that was not recognized as existing at the time of trial, if retrospective application of that right is required." *Id.* § 40-30-117(a)(1). Once a motion to reopen is granted, "the procedure, relief and appellate provisions of this part shall apply." *Id.* § 40-30-117(b)(1).

That said, "a post-conviction court's grant of a motion to reopen does not fully place a petitioner back into the procedural posture of his original post-conviction proceedings." *Harold Wayne Nichols*, 2019 WL 5079357, at *7. As noted by the Tennessee Supreme Court, claims raised in a motion to reopen and subsequent amendments might be barred by the statute of limitations and previous determination. *Coleman v. State*, 341 S.W.3d 221, 255 (Tenn. 2011). Generally, a petitioner must file a petition for post-conviction relief "within one (1) year of the date of the final action of the highest state appellate court to which an appeal is taken or, if no appeal is taken, within one (1) year of the date on which the judgment became final, or consideration of the petition shall be barred." T.C.A. § 40-30-102(a) (2018). The statutory grounds for tolling the statute of limitations are coextensive to those for granting a motion to reopen. *Id.* § 40-30-102(b) (2018). Thus, if an amended claim arising from a motion to reopen a post-conviction petition does not meet the requirements of Code sections 40-30-102(b) and 40-30-117(a), the claim is barred by the statute of limitations. "A ground for relief is previously determined if a court of competent jurisdiction has ruled on the merits after a full and fair hearing." *Id.* § 40-30-106(h) (2018). Further, a claim will be treated as waived when "not raised before a court of competent jurisdiction in which the ground could have been presented." *Id.* § 40-30-110(f) (2018); *see Coleman*, 341 S.W.3d at 257 (discussing the waiver of a specific ineffective assistance of counsel claim for failing to raise it in the original post-conviction petition). Claims that are raised beyond the statute of limitations, have been previously determined, or have been waived shall be summarily dismissed. T.C.A. § 40-30-106(b), (f). We review the post-conviction court's summary denial of relief de novo. *Arnold v. State*, 143 S.W.3d 784, 786 (Tenn. 2004).

## I.    *Johnson* Motion to Reopen Allegation

In support of the motion to reopen the post-conviction petition, the Petitioner alleged that the Supreme Court's holding in *Johnson* renders void the prior violent felony

aggravating circumstance. While the post-conviction court preliminarily granted the motion to reopen based upon this allegation, the court ultimately determined that the decision in *Johnson* was inapplicable to Tennessee's prior violent felony aggravating circumstance. On appeal, the Petitioner argues that the prior violent felony aggravating circumstance is unconstitutionally vague in light of *Johnson*. The State asserts that the holding in *Johnson* is inapplicable to the Petitioner's case.

In *Johnson*, the Supreme Court examined the definition of a violent felony under the Armed Career Criminal Act (ACCA), which provides increased punishment for a defendant convicted of being a felon in possession of a firearm if a defendant has three or more previous convictions for a violent felony. *See* 18 U.S.C. § 924(e)(1). The ACCA defined a violent felony as

> any crime punishable by imprisonment for a term exceeding one year . . . that – (i) has as an element the use, attempted use, or threatened use of physical force against the person of another, or (ii) is burglary, arson, or involves the use of explosives, *or otherwise involves conduct that presents a serious potential risk of physical injury to another*.

18 U.S.C. § 924(e)(2)(B) (emphasis added). The "otherwise involves conduct" language is referred to as the ACCA's residual clause. *Johnson*, 135 S. Ct. at 2556. The Court observed that the residual clause does not involve an examination of the elements of a prior offense, but instead "asks whether the crime '*involves conduct*' that presents too much risk of physical injury." *Id.* at 2557 (emphasis in the original). The Court determined that the judicial assessment of risk under the residual clause, which was not tied to the facts concerning the particular offense or to the statutory elements, rendered the residual clause unconstitutionally vague. *Id.* at 2557. In so doing, however, the Court limited its holding and held that the elements clause contained in subsection (i) survived constitutional scrutiny. *Id.* at 2563.

This court recently analyzed the application of *Johnson* to Tennessee's prior violent felony aggravating circumstance. *See Harold Wayne Nichols*, 2019 WL 5079357. In *Harold Wayne Nichols*, we noted that "this Court has rejected *Johnson* claims with respect to both the pre- and post-1989" versions of the prior violent felony aggravating circumstance when raised in applications for permission to appeal from the denial of a motion to reopen a post-conviction petition "because our supreme court has held, that under either version of the statute, trial courts are to look to the actual facts of the prior felony to determine the use of violence when such cannot be determined by the elements of the offense alone." *Id.* at *6 (citations omitted). Unlike the approach to the ACCA's residual clause, "our precedent has never required the use of a judicially imagined ordinary case in applying the prior violent felony." *Id.* "Tennessee's prior violent felony

aggravating circumstance is not void for vagueness under *Johnson*." *Id.* Therefore, the Petitioner is not entitled to relief as to this claim.

## II. Claims Raised in the Amended and Supplemental Petitions

### A. *Hurst* and Thirteenth Juror Rule

The Petitioner argues that the Supreme Court's decision in *Hurst* is a new rule of constitutional law requiring retrospective application which, if so, qualifies as a basis to reopen the post-conviction petition and to argue that Tennessee's thirteenth juror rule violates the holding in *Hurst* because the rule allows a trial judge to overrule a jury's penalty phase verdict. The State asserts that "this Court has already determined that *Hurst* did not announce a new constitutional rule requiring retrospective application" and that the thirteenth juror rule does not undermine a defendant's constitutional right to jury sentencing in a capital case.

The State correctly notes that this court has consistently held that *Hurst* did not announce a new constitutional rule requiring retrospective application in the context of applications for permission to appeal from the denial of a motion to reopen and, furthermore, that the *Hurst* rule is inapt as a challenge to the thirteenth juror rule. *See, e.g.*, *Charles Rice v. State*, No. W2017-01719-CCA-R28-PD (Tenn. Crim. App. Nov. 14, 2017) (order), *perm. app. denied* (Tenn. Mar. 15, 2018); *Richard Odom v. State*, No. E2017-01027-CCA-R28-PD (Tenn. Crim. App. Oct.20, 2017) (order); *Jonathan Stephenson v. State*, No. E2017-01067-CCA-R28-PD (Tenn. Crim. App. Sept. 19, 2017) (order), *perm. app. denied* (Tenn. Jan. 18, 2018); *Dennis Wade Suttles v. State*, No. E2017-00840-CCA-R28-PD (Tenn. Crim. App. Sept. 18, 2017) (order), *perm. app. denied* (Tenn. Jan. 18, 2018); *Gary W. Sutton v. State*, No. E2017-01394-CCA-R28-PD (Tenn. Crim. App. Sept. 13, 2017) (order), *perm. app. denied* (Tenn. Jan. 18, 2018); *David Lynn Jordan v. State*, No. W2017-00921-CCA-R28-PD (Tenn. Crim. App. Sept. 11, 2017) (order). Likewise, this court has recently held that "[b]ecause *Hurst* did not announce a new rule of constitutional law that must be applied retrospectively, [a *Hurst*] claim is procedurally barred by both the one-year statute of limitations and the one-petition rule." *Harold Wayne Nichols*, 2019 WL 5079357, at *8. The Petitioner is not entitled to relief on this basis.

### B. Shackling

The Petitioner asserts that his constitutional rights were violated "when he was forced to appear before the jury wearing visible shackles and handcuffs." The Petitioner argues that this claim has not been previously determined or waived because it could not be raised previously due to both trial and original post-conviction counsels'

ineffectiveness. The State argues that the post-conviction court did not err by denying this claim.

The post-conviction proceedings and the federal habeas corpus proceedings examined the increased courtroom security at the Petitioner's trial. *Nicholas Todd Sutton*, 1999 WL 423005, at *8-10; *Sutton*, 645 F.3d at 756-57. To the extent that the Petitioner now seeks to include the shackling allegation with additional claims of ineffective assistance of counsel, we conclude that the Petitioner is precluded from raising additional ineffective assistance of counsel allegations because the ineffective assistance of counsel claim was previously litigated and determined. *See Cone v. State*, 927 S.W.2d 579, 581-82 (Tenn. Crim. App. 1995) (stating that "[a] petitioner may not relitigate a previously determined issue by presenting additional factual allegations"). Further, "a post-conviction petitioner is not entitled to the effective assistance of counsel." *Grindstaff v. State*, 297 S.W.3d 208, 219 (Tenn. 2009) (citing *House v. State*, 911 S.W.2d 705, 712 (Tenn. 1995); *State v. Garrard*, 693 S.W.2d 921, 922 (Tenn. Crim. App. 1985)). Therefore, the Petitioner is not entitled to relief as to this issue.

## C. Jury Selection

The Petitioner argues that he was denied an impartial jury because (1) several jurors expressed "automatic death-voting" bias and (2) counsel were ineffective in failing to select "life-qualified" jurors. The State asserts that the post-conviction court did not err by denying relief.

On direct appeal, the Petitioner challenged the trial court's dismissal of "prospective jurors . . . who expressed that under no circumstances could they find a death penalty." *Sutton*, 761 S.W.2d at 769. The court concluded that the trial court committed no error concerning the dismissal of jurors. *Id*. Thus, a general challenge to the jury selection process had been previously determined. A specific claim that the jury selection process resulted in several "automatic death-voting" jurors to be selected is waived. As this claim relates to an additional allegation of the ineffective assistance of counsel, the Petitioner cannot relitigate that claim by adding new factual allegations. *See Grindstaff*, 297 S.W.3d at 219. The Petitioner is not entitled to relief on this basis.

## D. Ineffective Assistance of Counsel

The Petitioner argues that counsel were ineffective for failing to investigate adequately and to present mental health evidence regarding diminished capacity during both phases of the trial. The State argues that the post-conviction court did not err by denying this claim because it had been previously determined.

- 13 -

The Petitioner raised myriad allegations of ineffective assistance of counsel in the original post-conviction proceedings and in the federal habeas corpus proceedings, including allegations related to the presentation of mitigation evidence. *Sutton*, 645 F.3d at 756-765; *Nicholas Todd Sutton*, 1999 WL 423005, at *10-27. The Petitioner cannot relitigate this issue by adding new factual allegations. *See Grindstaff*, 297 S.W.3d at 219. Further, we note the Sixth Circuit's characterization of the unpresented mitigation evidence concerning the Petitioner's background, the conditions of the prison system, and unproffered testimony when the court concluded that "[t]he net mitigating value of all of this evidence is too low, and the aggravating circumstances are too strong." *Sutton*, 645 F.3d at 765. This claim has been previously determined, and the Petitioner is not entitled to relief on this basis.

## E.    Prosecutorial Misconduct

The Petitioner contends that prosecutorial misconduct "tainted the jury's death verdict" and that counsel were ineffective for failing to move for a mistrial at trial or to interview jurors "during post-conviction." The State asserts that the post-conviction court did not err by denying this claim because it has been previously determined.

The Petitioner raised allegations of prosecutorial misconduct in the direct appeal from the conviction proceedings. *Sutton*, 761 S.W.2d at 769. Likewise, he presented allegations of prosecutorial misconduct, either free-standing or in relation to counsel's effectiveness, in both the post-conviction and the federal habeas corpus proceedings. *Sutton*, 645 F.3d at 757-760; *Nicholas Todd Sutton*, 1999 WL 4230005, at *27-30. The Petitioner cannot relitigate the ineffective assistance of counsel issue by adding new factual allegations. *See Grindstaff*, 297 S.W.3d at 219. This claim has been previously determined, and the Petitioner is not entitled to relief on this basis.

## F.    Prison Conditions

The Petitioner asserts that the mistreatment he has endured while incarcerated precludes the imposition of the death penalty. The State argues that the post-conviction court properly determined that this issue has been waived.

Evidence of prison conditions was presented at the trial, in the post-conviction proceedings, and in the federal habeas corpus proceedings. For the first time pursuant to this motion to reopen, the Petitioner now claims that the Eighth Amendment precludes his death sentence when he has endured the conditions of his incarceration. This issue is waived for failing to raise it "before a court of competent jurisdiction in which the ground could have been presented." *See* T.C.A. § 40-30-110(f). The Petitioner is not entitled to relief on this basis.

**G.      Death Penalty Following Plea Offer of Life Imprisonment**

The Petitioner argues that his death sentence is arbitrary and capricious "because it was imposed following the prosecution's offer of a life sentence" during plea negotiations. This issue is waived for failing to raise it "before a court of competent jurisdiction in which the ground could have been presented." *See id*. The Petitioner is not entitled to relief on this basis.

**H.      Prior Violent Felony Committed at Age Eighteen**

The Petitioner asserts that his death sentence is unconstitutional because the prior violent felony – first degree murder – upon which one of the aggravating circumstances rests was committed when he was eighteen years old. This issue is waived for failing to raise it "before a court of competent jurisdiction in which the ground could have been presented." *See id*. The Petitioner is not entitled to relief on this basis.

**I.      Summary Denial of Post-Conviction Relief Claims**

The Petitioner is not entitled to relief as to any claim alleged in the motion to reopen or in the amended and supplemental petitions. Nevertheless, the Petitioner contends that he was denied due process by the post-conviction court's summary denial of relief. As this court explained in *Harold Wayne Nichols*,

> the post-conviction court did not err in denying relief on any of the claims raised by Petitioner. The *Johnson* claim was the only one that was not procedurally barred; because that claim raised only a question of law and statutory interpretation, there was no need for an evidentiary hearing. The post-conviction court, despite its earlier finding that Petitioner had raised a colorable claim, was clearly authorized by the Post-Conviction Procedure Act to dismiss the amended petition without an evidentiary hearing upon conclusively determining that Petitioner was not entitled to relief.

*Harold Wayne Nichols*, 2019 WL 5079357, at *11 (citations omitted); *see also* T.C.A. § 40-30-109(a). "All that due process requires in the post-conviction setting is that the defendant have 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *Stokes v. State*, 146 S.W.3d 56, 61 (quoting *Matthews v. Eldridge*, 424 U.S. 319, 333, 96 S. Ct. 893 (1976)). The Petitioner has been afforded due process at every stage of his direct and collateral litigation challenging his first degree murder conviction and death sentence.

### III. Conflict of Interest

The Petitioner alleges that the Assistant District Attorney General's prior representation of the victim before the Assistant District Attorney General's employment with the District Attorney General's Office creates an actual conflict of interest and an appearance of impropriety. The State asserts that the Petitioner failed to file a timely motion to disqualify the Assistant District Attorney General, that there is no ruling for this court to review, and that the "Petitioner can only ask for a remand for a hearing on the question." The State also notes, however, that this court has already denied the Petitioner's request for remand and that this court properly denied the remand because nothing the Assistant District Attorney General may have learned in his representation of the victim over thirty years ago when the victim was prosecuted for child molestation would bear on the Petitioner's ability to raise a claim under the narrow procedural mechanism provided in a motion to reopen the first post-conviction petition.

On May 7, 2018, almost one month after the post-conviction court's order summarily denying the post-conviction claims, the Petitioner filed a motion to reconsider the court's order, alleging that counsel had learned that the Assistant District Attorney General had represented the victim in the late-1980s child rape prosecution that ultimately resulted in the victim's incarceration at the Morgan County Regional Correctional Facility. The Petitioner argued that this prior relationship created "competing ethical duties" in that the now Assistant District Attorney General had a duty to disclose favorable evidence to the Petitioner that he might have learned through his representation of the victim.

On May 21, 2018, the State filed a response to the Petitioner's motion to reconsider. In it, the Assistant District Attorney General argued that no conflict of interest or appearance of impropriety could be established based upon counsel's representation of the victim thirty-two years before counsel's employment as a government attorney involved in this collateral matter. The Assistant District Attorney General also noted that the Petitioner's speculative allegation that counsel "likely learned during his representation of Carl Estep that he had a propensity towards violence" would have "absolutely no bearing upon the issues and legal analysis that the Court set out in the Order that the petitioner seeks to set aside."

On July 12, 2018, the post-conviction court denied the motion to reconsider for lack of jurisdiction. Before this court, the Petitioner sought a stay of the briefing schedule and a remand for an evidentiary hearing on the conflict issue. We denied the motion, noting that "[n]othing in the trial court's disposition of this matter would suggest any use of information allegedly known to [the Assistant District Attorney General] through his representation of Estep." The Presiding Judge of this court later denied the

Petitioner's motion for en banc review.  The Petitioner then sought permission to supplement the appellate record with pleadings and a transcript concerning the disqualification of the District Attorney General's Office that occurred in the Petitioner's related petition for a writ of error coram nobis.  We denied the Petitioner's motion to supplement the appellate record because the matters were not reviewed and addressed by the post-conviction court in its disposition of this matter.

Initially, the Court observes that "a motion to reconsider is not expressly authorized in a post-conviction proceeding." *Michael Joe Boyd v. State*, No. W1999-01981-CCA-R3-PC, 1999 WL 33261797, at *5 (Tenn. Crim. App. Dec. 21, 1999); *see also State v. Rockwell*, 280 S.W.3d 212, 214 (Tenn. Crim. App. 2007) (noting that the "rules of criminal procedure do not provide for a motion to rehear or reconsider").  Even if authorized, a motion to reconsider would not affect the tolling of the notice of appeal or maintain jurisdiction in the post-conviction court.  *See* T.R.A.P. 4(e).  The post-conviction court lost jurisdiction when the Petitioner filed a notice of appeal on May 15, 2018.  This court has ruled twice that the Petitioner has not established the necessity of a remand.  The post-conviction court summarily denied relief because the Petitioner was not entitled to reopen the first post-conviction petition and because the amended claims had been waived or previously determined.  The Petitioner is not entitled to relief on this basis.

## IV.    Cumulative Error

Finally, the Petitioner argues that "all claims of error coalesced into a unitary abridgement of [his] constitutional rights" under the Fifth, Sixth, Eighth, and Fourteenth Amendments of the United States Constitution and Article I, sections 6, 7, 8, 9, 16, 17, 19, and 32 and Article XI, sections 8 and 16 of the Tennessee Constitution.  "To warrant assessment under the cumulative error doctrine, there must have been more than one actual error committed in the trial proceedings." *State v. Hester*, 324 S.W.3d 1, 77 (Tenn. 2010).  Because the Petitioner has not established any error, he is not entitled to relief pursuant to the cumulative error doctrine.

## Conclusion

Based upon the foregoing, we affirm the judgment of the post-conviction court.

_____
ROBERT H. MONTGOMERY, JR., JUDGE